UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/22/19

---

FRANKLIN MCKENZIE,

      Plaintiff,

  -v-

CITY OF NEW YORK, et al.,

      Defendants.

---

17 Civ. 4899 (PAE)

<u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

  Plaintiff Franklin McKenzie brings this action under 42 U.S.C. §§ 1983 and 1988 and New York law against the City of New York ("City") and New York City Police Department ("NYPD") Officers Francis Twum and Paul Catanzarita (collectively, "defendants"). Against Twum and Catanzarita, McKenzie brings federal claims of false arrest, First Amendment retaliation, excessive force, unlawful search and seizure, deprivation of the right to a fair trial through fabrication of evidence, and malicious prosecution, and a state-law claim of malicious prosecution. Against the City, he brings a federal *Monell* claim and a state-law claim for *respondeat superior* liability to the extent of the individual defendants' liability.[1]

  McKenzie's claims arise out of a December 7, 2014 traffic stop. The Bronx District Attorney's Office brought charges against McKenzie in connection with his conduct immediately following that stop. McKenzie stood trial one charge—for reckless driving—but the Bronx District Attorney's Office dismissed that charge after Twum testified. After the dismissal, McKenzie brought this civil rights action.

---

[1] *See* Nov. 9, 2018 Hr'g Tr. at 33. McKenzie earlier brought, but has withdrawn, a state-law fabrication of evidence claim and a federal-law failure to intervene claim. *See* Dkt. 71 at 1, 17, 23.

With discovery complete on the claims against them,[2] Twum and Catanzarita now move

for summary judgment on all such claims, save the false arrest claim as brought against Twum.

For the following reasons, the Court grants Catanzarita's summary judgment motion on the false

arrest, First Amendment retaliation, and excessive force claims against him, and Twum's

summary judgment motion on the First Amendment retaliation and excessive force claims

against him. The Court denies defendants' remaining motions.

## I.      Background

### A.      Factual Background[3]

#### 1.       The December 7, 2014 Incident

On December 7, 2014, McKenzie was pulled over by Officer Twum, who was driving a

police vehicle and accompanied by another police officer, Sergeant Victor Otero. JSF ¶¶ 1–2.

McKenzie and his girlfriend, Shemone Heron, who sat in the passenger seat, were on their way

to do laundry and had at least four full laundry bags in the rear seat of the vehicle. Pl. Counter

---

[2] The Court has stayed discovery as to the *Monell* claim pending determination of the extent to which McKenzie's claims against the individual defendants are viable. *See* Dkt. 28.

[3] The Court draws its account of the underlying facts from: the parties' respective submissions on the motion for summary judgment, including their joint statement of stipulated facts, Dkt. 60 ("JSF"), and each party's Statement Pursuant to Local Civil Rule 56.1, *see* Dkt. 65 ("Def. 56.1") and Dkt. 70 ("Pl. Counter 56.1"), as well as the declaration of William KeAupuni Akina, Esq., in support of defendants' motion, Dkt. 66 ("Akina Decl."), and attached exhibits; the declaration of Ryan Lozar, Esq., in opposition to defendants' motion, Dkt. 69 ("Lozar Decl."), and attached exhibits.

Citations to a party's 56.1 statement incorporate the evidentiary materials cited therein. When facts stated in a party's 56.1 statement are supported by testimonial, video, or documentary evidence and not denied by the other party, or denied by a party without citation to conflicting admissible evidence, the Court finds such facts to be true. *See* S.D.N.Y. Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in statement required to be served by the opposing party."); *id.* Rule 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

56.1 ¶¶ 2–3. When McKenzie was stopped, Officer Catanzarita and Officer Hector Roman were on foot patrol nearby. JSF ¶ 4. McKenzie's vehicle was stopped approximately four to five feet from a staircase leading to a subway station. Pl. Counter 56.1 ¶ 8.

After pulling up behind McKenzie's vehicle, Twum exited his vehicle and approached the driver's side of McKenzie's vehicle; Otero approached the passenger side. *Id.* ¶ 10. Twum then asked McKenzie for his driver's license, registration, and insurance. *Id.* ¶ 11. Catanzarita, observing from across the street, noticed that McKenzie's vehicle and Twum's vehicle had both come to a stop. Catanzarita watched as Twum approached McKenzie's vehicle, interacted with McKenzie, and then returned to his vehicle. *Id.* ¶ 18. Catanzarita and Roman then walked over to the scene of the vehicle stop. JSF ¶ 5.

McKenzie's account of what happened next is as follows. McKenzie attests that he asked Catanzarita why he had been stopped, that Catanzarita went to speak to Twum, and that Twum then returned to McKenzie's vehicle and ordered that he turn the vehicle off. Pl. Counter 56.1 ¶¶ 21, 26; *see also* Dkt. 69-1 ("McKenzie Dep.") at 57. McKenzie further attests that he asked Twum multiple times why he had been pulled over, but that Twum would not answer his question, stating that he did not have to tell McKenzie anything. Pl. Counter 56.1 ¶ 27; *see also* McKenzie Dep. at 57–58. According to McKenzie, Twum then ordered him to get out of the vehicle and told him that he was under arrest. Pl. Counter 56.1 ¶¶ 27–28. McKenzie admits that he refused to comply with the order and asked Twum why he was being detained. *Id.* McKenzie attests that Twum then opened McKenzie's door, reached inside the vehicle, grabbed him by the shoulders and arms, and forcibly removed him from the vehicle with the assistance of Catanzarita. *Id.* ¶ 29. McKenzie further attests that, as Twum opened the car door to pull McKenzie out of the vehicle, McKenzie reached for his cell phone, which was sitting on the

3

center console next to his right hand. *Id.* ¶ 30. McKenzie argues that he was unable to film the officers using the phone, or even to access his phone, before Twum knocked the phone out of his hand, dragged him out of the car, pushed him against the vehicle, and, with the assistance of Catanzarita, finally placed him in handcuffs. *Id.* ¶¶ 31, 34. According to McKenzie, the handcuffs, applied tightly, left him with scratches on both arms that took multiple days to heal. *Id.* ¶ 35.

Numerous aspects of these events are in dispute. First, the parties dispute whether there was a lawful basis for the traffic stop. Although defendants do not seek summary judgment on this point, they contend that the stop was justified because McKenzie was driving recklessly, to wit, that he made a sharp turn that "nearly struck PO Twum's vehicle," "causing PO Twum to swerve . . . to avoid a collision." Def. 56.1 ¶ 5 (citing Dkt. 66-4 ("Twum Dep. I") at 72). In addition, during his deposition, Twum stated that "there were several bags in the vehicle which were blocking the rear windshield of the vehicle." Twum Dep. I at 155. McKenzie disputes these points.

Defendants also dispute various aspects of McKenzie's account of the stop. Defendants attest that McKenzie delayed in complying with requests for his license and registration, screamed and swore at the officers, caused a crowd to gather, refused requests to turn off his vehicle, refused orders to exit his vehicle, and resisted being handcuffed. Def. 56.1 ¶¶ 13–14, 21, 23–24, 26–28, 33–34. According to defendants, in resisting the officers' attempts to place him in handcuffs, McKenzie caused Catanzarita to suffer a laceration to his right hand. *Id.* ¶ 34. McKenzie denies these allegations. He attests that he never raised his voice, shouted, or used profanity. Pl. Counter 56.1 ¶ 14. McKenzie further attests that, surrounded by police officers, he was worried and scared, and that Twum became agitated and angry when McKenzie continued to

ask why he had been stopped. *Id.* ¶ 23. Finally, McKenzie denies physically resisting attempts to handcuff him. *Id.* ¶ 33.

After arresting McKenzie, officers drove him to the 47th Precinct in a police vehicle, while another officer drove McKenzie's vehicle to the precinct. JSF ¶¶ 6–8.[4] McKenzie attests that Twum told Catanzarita to drag Heron from the vehicle if she would not get out and that Heron then exited the vehicle. Pl. Counter 56.1 ¶ 41.

While at the precinct, Twum served McKenzie with two summonses, charging him with reckless driving and disorderly conduct violations under New York law. JSF ¶ 9. An arrest report completed that day stated that McKenzie had violated New York law by resisting arrest, obstructing governmental administration, having a broken mirror, and having an obstructed rear windshield. *Id.* ¶ 10. The same day, Catanzarita signed a sworn criminal complaint alleging that McKenzie had committed the offense of resisting arrest; Twum signed a sworn deposition substantiating information in Catanzarita's complaint. *Id.* ¶¶ 11–12. McKenzie attests that, at the time he was served with the summons, Twum told McKenzie that he did not like his attitude. McKenzie Dep. Tr. at 77–78.

On December 8, 2014, McKenzie was arraigned on a resisting arrest charge brought by the Bronx District Attorney's Office on the basis of a criminal complaint signed by Catanzarita. JSF ¶¶ 11, 13. McKenzie was released after approximately 17 hours in custody. *Id.* ¶ 15.

Although McKenzie's vehicle was not searched at the scene of the traffic stop, McKenzie contends that, upon receipt of his car, he noticed that the laundry bags were not where he left them and that they seemed to have been dumped out and then refilled. Pl. Counter 56.1 ¶¶ 46, 49.

---

[4] According to McKenzie, Twum and Otero drove him to the precinct, while Catanzarita seized his car and drove it there. *Id.* ¶¶ 41–42.

### 2. McKenzie's Prosecution

In February 2015, the reckless driving and disorderly-conduct summonses issued against McKenzie were dismissed and sealed. JSF ¶¶ 16, 19.

On February 6, 2015, Twum signed a sworn superseding complaint charging McKenzie with resisting arrest and disorderly conduct; McKenzie, however, was never charged or arraigned based on this criminal complaint. *Id.* ¶¶ 17–18.

On March 19, 2015, Twum signed a second sworn superseding complaint, charging McKenzie with resisting arrest and reckless driving. McKenzie was charged and arraigned by the Bronx District Attorney's Office on the basis of that complaint. *Id.* ¶¶ 20–21.

On May 4, 2016, on the day of McKenzie's criminal trial, the Bronx District Attorney's Office moved to dismiss the resisting arrest charge. *Id.* ¶ 22. The court commenced a bench trial on the sole remaining charge, for reckless driving. *Id.* ¶ 23. At the bench trial, Twum was the only witness. *Id.* ¶ 25. On cross-examination, Twum was presented with photographic evidence of the scene of the vehicle stop, which, contrary to his testimony, depicted a road without double yellow lines and with large speed bumps. Pl. Counter 56.1 ¶ 5. At the conclusion of Twum's testimony on May 5, 2016, the Bronx District Attorney's Office moved to dismiss the reckless driving charge, and therefore the remaining case against McKenzie, stating that it lacked sufficient evidence to meet its burden of proof. JSF ¶¶ 25–28.

### 3. McKenzie's Notice of Claim

On or about February 18, 2015, McKenzie filed a notice of claim with the New York City Comptroller's Office regarding the December 7, 2014 arrest. *Id.* ¶ 29. On that claim, McKenzie was scheduled to appear for an October 8, 2015 hearing pursuant to General Municipal Law § 50-h ("50-h hearing"), but McKenzie did not appear. *Id.* ¶¶ 30–31. McKenzie's counsel telephoned to state that McKenzie had a pending criminal case and would not attend. *Id.* ¶ 31.

On or about May 25, 2016, McKenzie filed a second notice of claim. *Id.* ¶ 32. It alleged

that Twum and Catanzarita had abridged his right to a free trial and to be free from malicious

prosecution. *Id.* No hearing was ever held or scheduled on this matter. *Id.* ¶ 33.

**B.     Procedural History of This Litigation**

On June 28, 2017, McKenzie filed the Complaint in this action. Dkt. 1. On November 6,

2017, defendants filed their answer. Dkt. 11. On March 1, 2018, after a mediation session failed

to resolve this case, the Court held an initial conference. *See* Dkt. 12. On March 30, 2018,

McKenzie filed a First Amended Complaint. Dkt. 18 ("FAC"). On April 13, 2018, defendants

answered. Dkt. 19.

On November 9, 2018, the Court held a pre-motion conference to discuss defendants'

anticipated summary judgment motion. Dkt. 55. On November 30, 2018, the parties filed a joint

statement of stipulated facts . Dkt. 60. On December 14, 2018, defendants filed a motion for

partial summary judgment, Dkt. 64; a Rule 56.1 Statement, Dkt. 65; a declaration of William

KeAupuni Akina, Esq., Dkt. 66, with attached exhibits; and a memorandum of law in support,

Dkt. 67 ("Def. Mem."). On January 5, 2015, McKenzie filed an opposition, Dkt. 71 ("Pl.

Mem."), a Rule 56.1 Statement, Dkt. 70, and a declaration of Ryan Lozar, Esq., Dkt. 69, with

attached exhibits. On January 16, 2019, defendants filed a reply. Dkt. 74 ("Def. Reply").

On March 4, 2019, McKenzie submitted a notice of supplemental authority. Dkt. 79. On

June 24, 2019, defendants submitted a notice of supplemental authority. Dkt. 81.

**II.     Legal Standards Governing Motions for Summary Judgment**

To prevail on a motion for summary judgment, the movant must "show[] that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a

question of material fact. In making this determination, the Court must view all facts "in the

light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d

Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the movant meets its burden, "the nonmoving party must come forward with

admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary

judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may

not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion

for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation

marks and citation omitted). Rather, the opposing party must establish a genuine issue of fact by

"citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also*

*Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing

law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). In determining whether there are genuine issues of material fact, the Court is

"required to resolve all ambiguities and draw all permissible factual inferences in favor of the

party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d

Cir. 2012) (internal quotation marks and citation omitted).

## III. Discussion

Twum and Catanzarita move for summary judgment on the following claims brought

against both of them: First Amendment retaliation, excessive force, unreasonable search and

seizure, fabrication of evidence, and malicious prosecution. In addition, Catanzarita moves for

summary judgment on the false arrest claim against him. The Court addresses each claim, or set

of claims, in turn.

### A. False Arrest Claim Against Catanzarita

#### 1. Governing Law

Section 1983 provides redress for the deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff must establish (1) the violation of a right, privilege, or immunity secured by the Constitution or laws of the United States (2) by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–56 (1978).

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996), *cert. denied*, 528 U.S. 946 (1999) (internal citations omitted); *accord Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007). Under New York law, a plaintiff bringing a claim for false arrest must show that "'(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975)).

Here, the only officer to move for summary judgment on false arrest is Catanzarita, who, as discussed above, did not initiate the original traffic stop of McKenzie but instead assisted Twum as events unfolded. In light of the arguments Catanzarita makes as to this claim, the Court elaborates on two aspects of the legal standards relevant to false arrest claims: the standard of probable cause and the defense of qualified immunity.

### a.  Probable Cause

A confinement is privileged where the arresting officer had probable cause to arrest. *See Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003); *Jenkins*, 478 F.3d at 84 ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." (internal quotation marks and citation omitted)). Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer*, 63 F.3d at 119 (internal quotation marks and citations omitted). "When determining whether probable cause exists courts must consider those facts *available to the officer* at the time of the arrest and immediately before it." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and citation omitted); *accord Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.").

"[P]robable cause does not require an awareness of a particular crime, but only that some crime may have been committed." *Ackerson v. City of White Plains*, 702 F.3d 15, 20 (2d Cir. 2012) (internal quotation marks and citation omitted); *see also Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) ("[A]n arrest is not unlawful so long as the officer ha[d] . . . probable cause to believe that the person arrested . . . committed any crime."). So long as an arrest is supported by probable cause, a person may be arrested for a violation of any offense committed in an officer's presence, no matter how minor, so long as that offense is a crime. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

"In a lawsuit claiming false arrest, the burden of establishing the absence of probable cause rests on the plaintiff." *Lin v. City of New York*, No. 14 Civ. 9994 (PAE), 2016 WL 7439362, at *11 (S.D.N.Y. Dec. 21, 2016) (internal citations and alterations omitted). On summary judgment, the existence of probable cause may be determined as a matter of law "if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant*, 101 F.3d at 852. Where, however, the parties dispute material facts bearing on such events and knowledge, summary judgment is not appropriate. *Id.*

b. *Qualified Immunity*

Even absent probable cause to arrest the plaintiff, an officer is entitled to qualified immunity if "arguable probable cause" existed—*i.e.*, if "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law." *Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001) (internal quotation marks and citation omitted). The doctrine of qualified immunity provides a complete defense where "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991). Its purpose is to "'give[] government officials breathing room to make reasonable but mistaken judgments'" and to protect "'all but the plainly incompetent or those who knowingly violate the law.'" *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). Because qualified immunity is an affirmative defense, defendants bear the burden of proving arguable probable cause. *See Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011).

### 2. Discussion

In pursuing summary judgment on the false arrest claim, Catanzarita makes several arguments. First, he argues, whether or not Twum had probable cause to stop and arrest McKenzie at the time of the traffic stop—an issue which all parties agree turns on disputed facts and cannot be resolved on summary judgment—independent probable cause to arrest McKenzie arose thereafter, based on McKenzie's alleged obstruction of governmental administration and resisting arrest. Def. Mem. at 8. Second, he argues, because Catanzarita arrived on the scene after Twum had pulled McKenzie over, he was entitled to rely on Twum's determination that there had been probable cause to arrest based on actions prompting the traffic stop. *Id.* (citing *Loria v. Gorman*, 306 F.3d 1271, 1288 (2d Cir. 2002) ("Absent significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful."). Third, he argues, in any event, qualified immunity protects Catanzarita because it was not unreasonable for Catanzarita to have concluded, including on the basis of information conveyed to him by Twum, that probable cause existed. *Id.* at 17.

For two independent reasons, the Court grants summary judgment on this claim in favor of Catanzarita. First, the undisputed facts supply probable cause for Catanzarita to arrest McKenzie for obstruction of governmental administration. "Under New York law, obstructing governmental administration has four elements: (1) prevention or attempt to prevent (2) a public servant from performing (3) an official function (4) by means of intimidation, force or interference." *Cameron v. City of New York*, 59 F.3d 50, 68 (2d Cir. 2010) (internal quotation marks and citation omitted); *see also* N.Y. Pen. L. § 195.05. Here, McKenzie admits that, at the point when Catanzarita and Twum were at his vehicle, Twum asked McKenzie to turn off and exit his vehicle, but that McKenzie refused to do so. Pl. Counter 56.1 ¶ 23. Whether or not McKenzie committed the infractions that were the basis for the initial vehicle stop and whether

12

or not he later resisted arrest, McKenzie has admitted that he intentionally did not obey the orders of the officers involved in his arrest, by refusing to abide by Twum's requests for McKenzie to turn off his motor and exit his vehicle. This undisputedly occurred in the presence of Catanzarita and gave him probable cause to arrest for obstruction of governmental administration. *See, e.g., Kass v. City of New York*, 864 F.3d 200, 210 (2d Cir. 2017) (finding probable cause to arrest where plaintiff "refused to obey the officers' repeated orders to move along" and pulled elbow away from officer attempting to guide him in a particular direction); *Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. 1995) ("When [plaintiff] refused to leave the car, it was reasonable for [officers] to construe her actions as 'interference' and to arrest her for [obstruction of governmental administration]."); *Johnson v. City of New York*, No. 15 Civ. 6915 (ER), 2019 WL 294796 (S.D.N.Y. Jan. 23, 2019) (finding probable cause to arrest plaintiff for obstructing governmental administration where plaintiff ignored police orders to leave block party).

Second, Catanzarita is, in any event, entitled to qualified immunity. Even if—contrary to the analysis above—the conduct in which McKenzie admits having engaged did not supply probable cause to arrest for the offense of obstruction of governmental administration, that conduct was certainly enough, under the case law, to give a reasonable officer in Catanzarita's position reason to believe, even if mistakenly, that such an offense had occurred. *See Golino*, 950 F.2d at 870; *Sheehan*, 135 S. Ct. at 1774. At the summary judgment stage, a defendant need only demonstrate that reasonably competent officers faced with the same situation could have determined that probable cause existed to arrest McKenzie. "[I]f the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officer[]

is appropriate." *Danahy v. Buscaglia*, 134 F.3d 1185, 1190 (2d Cir. 1998) (quoting *Lennon*, 66 F.3d at 421). Here, an officer of reasonable competence in Catanzarita's position could have believed that probable cause existed to arrest McKenzie for obstruction of governmental administration. The doctrine of qualified immunity therefore affords a complete defense to Catanzarita on the false arrest claim.

Accordingly, the Court grants Catanzarita summary judgment on McKenzie's false arrest claim.

### B.    First Amendment and Retaliation Claims Against Both Defendants

McKenzie's First Amendment argument has two dimensions. First, McKenzie argues that the initial traffic stop was unlawful, and that he had a First Amendment right to record the arrest on his phone, which was infringed when the officers physically prevented him from doing so. Pl. Mem. at 11. Second, McKenzie argues, his ensuing arrest was an act of retaliation for the lawful exercise of his First Amendment rights in questioning the lawfulness of the initial traffic stop. *Id.*

### 1.    First Amendment Claim

As to McKenzie's claim that his First Amendment right to film his encounter with the officers was infringed, the Court grants defendants' motion for summary judgment, but solely on the basis of qualified immunity. The Court assumes *arguendo* that there is a First Amendment right to record police activity: although neither the Supreme Court nor the Second Circuit has had occasion to squarely so hold, every circuit to consider the question has "concluded that the First Amendment protects the right to record police officers performing their duties in a public space, subject to reasonable time, place and manner restrictions." *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 379 (S.D.N.Y. 2015); *see also Gerskovich v. Iocco*, No. 15 Civ. 7280 (RMB), 2017 WL 3236445, at *8 (S.D.N.Y. July 17, 2017) ("The First, Third, Fifth, Seventh,

Ninth, and Eleventh Circuits have found that the First Amendment protects the right to record police activity."). But these circuits have also recognized that such a right may not apply in certain circumstances, for example, "in particularly dangerous situations, if the recording interferes with the police activity, if it is surreptitious, if it is done by the subject of the police activity, or if the police activity is part of an undercover investigation." *Higginbotham*, 105 F. Supp. 3d at 381.

This qualification is important here, because the circumstances presented are not ones in which McKenzie's right to film his ongoing encounter with the police was clearly established. McKenzie was not a bystander witness; he was the subject of the police activity. Furthermore, at the time he asserts a First Amendment right to film, he was in the process of being arrested. As McKenzie concedes, he attempted to grab his phone, which was lying on the center console next to him, only *after* Twum had ordered McKenzie to exit the vehicle and told him that he was under arrest, Pl. Counter 56.1 ¶ 30, and, as noted earlier, McKenzie admits refusing to comply with Twum's order to turn off the motor and exit the car, *id.* ¶ 23.

In these circumstances, whether or not McKenzie had a legally protected First Amendment interest in filming *before* Twum had told him he was under arrest, it was not clearly established, as a matter of law, that he had a constitutional right to commence filming while he was in the course of being arrested (let alone in the course, possibly, of resisting arrest). Qualified immunity "depends upon whether the right plaintiff asserts is so clearly established that defendants should have known it." *Charles W. v. Maul*, 214 F.3d 350, 353 (2d Cir. 2000). On the undisputed facts, that was not so here.

## 2.    First Amendment Retaliation Claim

As to McKenzie's claim of First Amendment retaliation, to prevail, a plaintiff must establish that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by the exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). With respect to the first element, "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). "Speech directed at police officers will be protected unless it is 'likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or unrest.'" *Kerman v. City of New York*, 261 F.3d 229, 242 (2d Cir. 2001) (quoting *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 415 (2d Cir. 1999) (internal citations omitted)). As to the second element, "bare allegations of malice cannot overcome the qualified immunity defense." *Crawford El v. Britton*, 523 U.S. 574, 588 (1998) (internal quotation marks and citations omitted).

McKenzie's theory as to this claim is that the officers arrested him in retaliation for his attempt to exercise his First Amendment right to ask the officers why he had been pulled over at a traffic stop. This claim fails for two reasons.

First, this claim was not brought in McKenzie's complaint. The FAC instead formulated McKenzie's First Amendment claim solely to capture the theory above—that McKenzie's First Amendment rights were violated by the officers' refusal to permit him to film his arrest. *See* FAC ¶¶ 35–37. McKenzie raised a retaliation-based First Amendment claim for the first time in his opposition to defendants' motion for summary judgment. A claim first articulated in the course of summary judgment briefing, particularly when brought by a represented party, is properly viewed as untimely. *See, e.g.*, *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d

Cir. 2006) ("[A] district court does not abuse its discretion when it fails to grant leave to amend a complaint without being asked to do so."); *Wilson v. City of New York*, 480 F. App'x 592, 594 (2d Cir. 2012) ("[W]e agree with the district court that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment." (internal quotation marks omitted)).

In any event, even if McKenzie had timely alleged a First Amendment retaliation claim, such a claim would still fail. As noted, McKenzie has admitted facts that supplied probable cause to arrest him for obstruction of governmental administration. That gave an officer of reasonable competence a lawful basis for arresting McKenzie for those actions. McKenzie's claim of a retaliatory arrest, however, presupposes a lack of lawful basis to arrest. But, as the Supreme Court has recently held, where officers have probable cause to arrest, a plaintiff's "retaliatory arrest claim fails as a matter of law" unless plaintiff can show that individuals whose speech differed from plaintiff's were not arrested. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1728 (2019); *see also id.* (probable cause generally defeats a retaliatory arrest claim except where "a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been"). Such evidence could potentially include admissions by officers, statistical evidence of the arrest rates for the offense in question, or other direct evidence. *See id.* at 1733 (Gorsuch, J., concurring in part and dissenting in part); *id.* at 1741 (Sotomayor, J., dissenting). Here, however, the record is devoid of such evidence.

Summary judgment is therefore warranted for the officers on this claim.

### C. Excessive Force Claim Against Both Defendants

#### 1. Governing Legal Principles

"[E]xcept for § 1983's requirement that the tort be committed under color of state law, the essential elements of" a § 1983 excessive force claim and a state law assault and battery claim are "substantially identical." *Posr v. Doherty*, 944 F.2d 91, 94–95 (2d Cir. 1991).

As to such a claim, "[p]olice officers' application of force is excessive . . . if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)); *see also Nimely v. City of New York*, 414 F.3d 381, 391 (2d Cir. 2005) (plaintiff alleging battery by police officer under New York state law must prove that the officer's conduct "was not reasonable within the meaning of the New York statute concerning justification of law enforcement's use of force in the course of their duties"). Factors relevant to this inquiry include "'the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016) (quoting *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 251–52 (2d Cir. 2001)). The evaluation of a police officer's use of force must be made from the perspective of a reasonable police officer at the time of the incident, not based on hindsight. *Graham*, 490 U.S. at 396. Evaluating the reasonableness of an application of force requires a careful consideration of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

"[I]t is . . . well established that '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a [plaintiff's] constitutional rights.'" *Mesa v. City of New York*, No. 09 Civ. 10464 (JPO), 2013 WL 31002, at *18 (S.D.N.Y. Jan. 3, 2013) (second alteration in original) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Significantly, "[t]he right to effectuate an arrest does include 'the right to use some degree of physical coercion.'" *Id.* (quoting *Esmont v. City of New York*, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005)).

Relevant to McKenzie's excessive force claim here, which relates largely to the manner in which handcuffs were applied to him, "[r]easonable arrests tend to involve handcuffing the suspect, and handcuffs lose their effectiveness if they are not attached tightly enough to prevent the arrestee's hands from slipping out." *Id.* (quotation marks omitted). When a plaintiff suffers only a *de minimis* injury, including from handcuffing, it is harder for the plaintiff to establish that the force used was excessive. *See Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009); *Mendoza v. McLean*, No. 14 Civ. 3231 (VB), 2016 WL 3542465, at *5 (S.D.N.Y. June 23, 2016) ("When there is probable cause to arrest, and the injury resulting from alleged excessive force is *de minimis*, the excessive force claim is typically dismissed."); *Lemmo v. McKoy*, No. 08 Civ. 4264 (RJD), 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011) ("Injuries held to be *de minimis* for purposes of defeating excessive force claims include short-term pain, swelling, and bruising."). "While tight handcuffing, alone, can give rise to a cause of action under § 1983, *Simpson v. Saroff*, 741 F. Supp. 1073, 1078 (S.D.N.Y. 1990), the plaintiff must suffer some form of injury from the tight handcuffs in order for such a claim to be actionable." *Vogeler v. Colbath*, No. 04 Civ. 6071 (LMS), 2005 WL 2482549, at *9 (S.D.N.Y. Oct. 6, 2005) (citing *Esmont*, 371 F. Supp. 2d at 215). "In determining the reasonableness of a handcuffing,

the Court considers whether (1) the handcuffs were unreasonably tight; (2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists." *Lin v. City of New York*, 14 Civ. 9994 (PAE), 2016 WL 7439362, at *11 (S.D.N.Y. Dec. 21, 2016)). Nevertheless, to make out an excessive force claim, it is not necessary that the plaintiff sustain an injury that necessitates medical treatment or a doctor's visit. *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987); *Cruz v. City of New York*, 232 F. Supp. 3d 438, 451 (S.D.N.Y. 2017).

Finally, "even if defendants' actions were unreasonable under current law, qualified immunity protects officers from the sometimes hazy border between excessive and acceptable force." *Kerman v. City of New York*, 261 F.3d 229, 239 (2d Cir. 2001) (alteration, quotation marks, and citation omitted). "If the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." *Id.* (citation omitted). In all events, "[g]iven the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).

### 2. Discussion

McKenzie contends that when he was arrested, Twum dragged him out of his car; shoved him against the side of the car; and then, with Catanzarita's assistance, applied too-tight handcuffs which left scratches on his wrist that took several days to heal. Pl. Counter 56.1 ¶¶ 31–34, 35–36. In moving for summary judgment, defendants principally argue that the force used cannot be found excessive. They note that McKenzie has not submitted any medical evidence verifying his claim of injury or identified any evidence that he ever asked the officers to loosen his handcuffs. Def. Mem. at 15–16 (citing *Esmont*, 371 F. Supp. 2d at 215 ("Neither

Esmont nor the Court's research reveals any cases permitting a plaintiff to establish an excessive force claim based on tight handcuffing in the absence of a request to loosen them.")). As context for the decision to restrain McKenzie in the manner they did, defendants state that, on their view of the facts, McKenzie's behavior during the traffic stop caused a crowd to gather, making defendants fear for their safety, and that McKenzie actively resisted arrest, and in so doing caused injury to Catanzarita's hand. Def. Mem. at 3, 14. Defendants alternatively seek summary judgment on grounds of qualified immunity.

McKenzie's excessive force claim has two dimensions. First, he claims excessive force based on his having been pulled out of his vehicle and shoved against the side of a car. But this form of police action does not, without more, establish that the officers used excessive force against him, let alone that an officer on the scene would recognize such actions as unreasonable. *See Lennon*, 66 F.3d at 426 (granting summary judgment on qualified immunity grounds on excessive force claim where an officer forcibly removed plaintiff from her vehicle, wrapped his arm around her shoulders, wrist, and neck, and pulled her out of the car). And that is all that McKenzie alleges as to that aspect of his excessive force claim: Although a plaintiff is not required to demonstrate that he received medical attention to make his claim, McKenzie notably does not attest to *any* injury that occurred as a result of his removal from the car or his placement thereafter against the side of the car. *See Zachary v. City of Newburgh*, No. 13 Civ. 5737 (VB), 2016 WL 4030925, at *6 (S.D.N.Y. July 25, 2016) ("[A] plaintiff generally must prove he sustained some injury to prevail on an excessive force claim."); *Landy v. Irizarry*, 884 F. Supp. 788, 798 n.14 (S.D.N.Y. 1995) ("An arrestee must prove some injury, even if insignificant, to prevail in an excessive force claim."). On the undisputed facts, which include that McKenzie had refused to exit the car, the officers' forcible removal and their ensuing (and non-injury-

causing) restraint of him cannot be held objectively unreasonable. *See Lennon*, 66 F.3d at 426 (2d Cir. 1995) (granting summary judgment on qualified immunity grounds where officer used force to remove plaintiff from car and plaintiff suffered only minor injuries to her hand); *Smith v. City of New Haven*, 166 F. Supp. 2d 636, 643 (D. Conn. 2001) (granting summary judgment on qualified immunity grounds on excessive force claim where officer forcibly removed plaintiff from car and handcuffed him).

Second, McKenzie claims that the application of handcuffs, resulting in scratches, was an act of excessive force. But McKenzie does not attest that he ever complained about the tightness of the handcuffs, alerted to the officers that he was being scratched, or asked the officers to loosen his handcuffs. Pl. Counter 56.1 ¶¶ 37–39. The Court assumes *arguendo* that the scratches left by the handcuffing here gave rise to more than a *de minimis* injury, while noting that this injury falls well short of the injuries commonly held sufficient to sustain an excessive force claim based on a plaintiff's handcuffing. *See Gonzalez v. City of New York*, No. 98 Civ. 3084, 2000 WL 516682, at *2, 5 (S.D.N.Y. Mar. 7, 2000) (denying officer's motion for summary judgment on excessive force claim where plaintiff provided medical report that "[a]s a result of the blunt trauma and the excessively tight handcuff, [plaintiff] sustained serious injuries including post-traumatic right radial nerve palsy . . . tear of the tendon of the right index finger . . . . chronic pain syndrome, post-traumatic right wrist arthropathy . . . [and] post-traumatic stress disorder"); *Simpson*, 741 F. Supp. at 1078 (denying officer's motion for summary judgment on excessive force claim where plaintiff's tight handcuffing led to "swollen and bleeding wrists," as well as a faintly detectable scar). But, under the doctrine of qualified immunity, given McKenzie's failure to complain about the tightness of the handcuffs or to request that his handcuffs be loosened, a reasonable police officer could not be held accountable for excessive

force. *See Esmont*, 371 F. Supp. 2d at 215 (court's research did not reveal "any cases permitting a plaintiff to establish an excessive force claim based on tight handcuffing in the absence of a request to loosen them"); *see also Rodriguez v. Farrell*, 294 F.3d 1276, 1278 (11th Cir. 2002) (granting summary judgment for officer where plaintiff failed to request that the handcuffs be loosened)); *Johari v. Columbus Police Dep't*, 186 F. Supp. 2d 821, 829 (S.D. Ohio 2002) (granting summary judgment to officer on excessive force claim where officer had no knowledge of plaintiff's discomfort). The Court accordingly grants defendants' motion for summary judgment on McKenzie's excessive force claim.

**D.      Unlawful Search and Seizure Claim Against Both Defendants**

McKenzie argues that the evidence permits the inference that his vehicle and the laundry bags inside it were searched after officers drove his vehicle back to the 47th Precinct.[5] Any such search, McKenzie argues, infringed his rights under the Fourth Amendment, which protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

Defendants' motion for summary judgment on this claim argues solely that the evidence does not support the fact of such searches. Defendants do not argue that, if such searches were found to have occurred, they were necessarily lawful.

This argument is unavailing. In his deposition, McKenzie testified that when his car was returned to him, he observed that the laundry bags were not where he left them, and that it appeared that his clothes had been dumped out and put back into the bags. Pl. Counter 56.1 ¶ 49.

---

[5] McKenzie also alleges the unlawful seizure of his person in the form of his arrest. FAC ¶ 50. But this claim is subsumed by—and properly litigated as part of—his false arrest claim, as to which, as noted, McKenzie's claim survives against only Twum. *See Lastra v. Barnes & Noble Bookstore*, No. 11 Civ. 2173, 2012 WL 12876, at *5 (S.D.N.Y. Jan. 3, 2012) (citing *Copeland v. N.Y. City Police Dep't*, No. 97 Civ. 4224 (DLC), 1998 WL 799169, at *2 (S.D.N.Y. Nov. 13, 1998) ("A Section 1983 claim for false arrest rests on the Fourth Amendment's protection from unreasonable seizures.")).

McKenzie also identifies other circumstantial evidence of a search, including Twum's complaint report entered on December 7, 2014, which states that there was a "canvas conducted." *Id.* Significant too, McKenzie testified that, upon his arrest, he heard Twum tell Catanzarita to order McKenzie's girlfriend, Heron, to exit the vehicle, *id.* ¶ 41, and that after she did so, Catanzarita then drove McKenzie's car to the 47th Precinct, where Heron later picked up McKenzie's car, *id.* ¶¶ 41, 46.

In pursuing summary judgment, defendants argue that McKenzie's claim of a search is unduly speculative. They assert that McKenzie's vehicle was driven back to the precinct not to facilitate a search, but only so that the officers could verify its true ownership. Defendants contend further that, after driving the car to the precinct, Catanzarita could not have searched McKenzie's car, because he went to Jacobi Medical Center soon thereafter for medical treatment for the abrasion on his hand. Def. 56.1 ¶ 45; Pl. Counter 56.1 ¶ 45.

McKenzie's evidence of a search of his car is far from conclusive. Nonetheless, his testimony that (1) defendants took custody of his car upon his arrest, and that (2) when he regained custody of the car, the laundry bags in it appeared to have been emptied supplies circumstantial evidence on which a jury could find a search of the car. The Court accordingly denies the motion for summary judgment on this claim. At trial, defendants will be at liberty to attempt to persuade the jury that no search occurred; that if a search did occur, the defendants were not accountable for it; or that the search was lawful under the governing standards.

### E.    State and Federal Malicious Prosecution Claims Against Both Defendants

#### 1.    Governing Law

To prevail on a § 1983 claim of malicious prosecution, a plaintiff "must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d

Cir. 2010) (citations omitted). However, "a State's tort law serves only as a source of persuasive authority rather than binding precedent in defining these elements." *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018).

"To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 198 (2d Cir. 2014) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks and citations omitted)). A plaintiff alleging malicious prosecution under § 1983 must also show "that there was . . . a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).

Just as "probable cause is a complete defense to a constitutional claim of false arrest and false imprisonment, . . . continuing probable cause is a complete defense to a constitutional claim of malicious prosecution." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (citation omitted). The same is true under New York law. *See Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995). Thus, "when a court finds there was probable cause for an arrest, and in the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest, no claim for malicious prosecution may lie." *Johnson v. City of Mount Vernon*, No. 10 Civ. 7006 (VB), 2012 WL 4466618, at *5 (S.D.N.Y. Sept. 18, 2012); *see also Rizzo v. Edison, Inc.*, 172 F. App'x 391, 393–94 (2d Cir. 2006) ("As no exculpatory evidence became known after Plaintiff's arrest, there was also probable cause to prosecute her."). The existence of

arguable probable cause for the underlying arrest will ordinarily afford an officer qualified immunity against a claim that the ensuing prosecution was malicious. *See, e.g.*, *Betts*, 751 F.3d at 82–83 (finding of qualified immunity on false arrest yielded finding of qualified immunity as to malicious prosecution claim); *Pinter v. City of New York*, 448 F. App'x 99, 105 n.6 (2d Cir. 2011) ("[O]ur finding that the officers had arguable probable cause to arrest Pinter necessarily entitles the defendants to qualified immunity on his malicious prosecution claim as well.").

## 2. Discussion

The Court notes at the outset that, although "continuing probable cause is a complete defense to a constitutional claim of malicious prosecution," Catanzarita cannot rely on the fact that he had arguable probable cause to arrest McKenzie for obstructing governmental administration to defeat McKenzie's malicious prosecution claim. *Betts*, 751 F.3d at 82. That argument fails for a straightforward reason: the prosecution of McKenzie was not for the one offense as to which the Court has found, on the undisputed facts, arguable probable cause—the offense of obstructing governmental administration. Instead, McKenzie was prosecuted for the offenses of resisting arrest and of reckless driving. As to these offenses, McKenzie's liability is very much disputed, and it is not argued that the undisputed facts supply arguable or actual probable cause.

The Court therefore considers the malicious prosecution claim as brought against both Twum and Catanzarita. The Court discusses first defendants' argument that McKenzie's state-law claim of malicious prosecution is precluded by his non-compliance with state procedural law. The Court then considers defendants' challenge on the merits to McKenzie's malicious prosecution claims, as brought under both federal and state law.

Under New York General Municipal Law § 50-i(1), a plaintiff cannot bring a state tort law claim against the City or any City employee unless, within 90 days from the date the claim arose, "a notice of claim shall have been made and served upon the city." N.Y. Gen. Mun. L. § 50-i(1); *see Fincher v. Cty. of Westchester*, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997) ("The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action."). Under § 50-h(5), "[i]f the claimant requests an adjournment or postponement beyond the ninety day period, the city, county, town, village, fire district or school district shall reschedule the hearing for the earliest possible date available." N.Y. Gen. Mun. L. § 50-h(5). Defendants argue that, based on the undisputed facts, McKenzie failed to satisfy these requirements, and that judgment therefore must be entered in defendants' favor on his state-law malicious prosecution claim.

Defendants' bid for summary judgment on these grounds fails. McKenzie filed a timely notice of claim in February 2015, alleging false arrest and imprisonment, illegal search and seizure, excessive force, malicious prosecution, and loss of wages. Dkt. 66-13 (first notice of claim) at 2. Ahead of the scheduled October 8, 2015, § 50-h hearing, McKenzie's counsel telephoned to state that McKenzie would not attend due to his pending criminal case. Pl. Counter 56.1 ¶¶ 77, 79–80. On the record before the Court, it appears that this hearing did not go forward. McKenzie filed a second notice of claim, on May 25, 2016, shortly after the May 5 termination of the criminal proceedings brought against him, in which he alleged that Twum and Catanzarita had abridged his right to a fair trial and, pertinent here, to be free from malicious prosecution. *Id.* ¶ 81; Dkt. 66-14 (second notice of claim) at 2–5. This notice of claim, like the first, was timely, insofar as the criminal case had ended just 21 days earlier. *See Roman v. Compy USA, Inc.*, 832 N.Y.S.2d 270, 271–72 (2d Dep't 2007) (New York malicious prosecution

claim accrues when the underlying criminal proceeding has terminated). After McKenzie's second notice of claim was filed, no hearing was ever scheduled or held. Pl. Counter 56.1 ¶ 82.

On the undisputed facts, there is no basis to hold that McKenzie failed to comply with any obligation relating to the filing of a notice of claim. Pertinent here, his second, operative notice was timely filed and identified the very claim, for malicious prosecution, that he pursues here. The record, as made known to this Court, does not supply any basis to conclude that McKenzie bore any responsibility for the fact that a § 50-h hearing on his claims, as identified in his second notice of claim, was never held. Under these circumstances, defendants have not articulated any basis to find that McKenzie forfeited his right to seek relief, under state law, for malicious prosecution.

      *b.*    *Applying the* Stampf *Factors*

McKenzie argues that the criminal complaints signed by Catanzarita and Twum, which formed the basis of the criminal charges brought against him, were produced on the basis of false information; that the officers lacked probable cause to charge him with those offenses; that the dismissal of the charges against him was a favorable termination; and that McKenzie's series of required court appearances to face his charges constituted a deprivation of liberty. Pl. Mem. at 20–21. McKenzie bases the malicious prosecution claim not on the summons that Twum issued on December 7, 2014, but on the criminal complaints that Catanzarita signed in December 2014 and that Twum signed in February and March 2015. *Id.* at 21. Defendants make various arguments—some particular to a defendant or charge, others global—why summary judgment should be granted in their favor on this claim. The Court addresses each in turn.

As to the resisting arrest and disorderly conduct charges contained in the February 6, 2015 criminal complaint, defendants argue that there is no evidence that criminal proceedings were initiated against McKenzie based on this complaint. Def. Mem. at 26. That is clearly

correct, as the parties stipulate that McKenzie was never charged or arraigned on the basis of the February 6, 2015 complaint. JSF ¶ 18. This complaint cannot be the foundation of a malicious prosecution claim.

As to the resisting arrest and reckless driving charges contained in the March 19, 2015 criminal complaint, both defendants argue that the claim fails because McKenzie has not adduced evidence that the ensuing proceedings terminated in his favor. Def. Mem. 25–26. And Catanzarita argues separately that a claim of malicious prosecution derived from the reckless driving charge contained in this complaint cannot stand against him, given his lack of involvement. *Id.* at 26.

Catanzarita's argument is incorrect. The evidence adduced in discovery would permit a finder of fact to conclude that both he and Twum initiated criminal proceedings against McKenzie on the basis of the March 19, 2015 criminal complaint. Although Catanzarita did not sign or make any representation in this complaint, he did sign the December 7, 2014 criminal complaint, which was then superseded in February 2015 and again in March 2015. *See* JSF ¶¶ 13, 17, 20. To be sure, Catanzarita did not testify at McKenzie's trial on the charges in that complaint. Pl. Counter 56.1 ¶ 62. And the act of arresting McKenzie, alone, does not constitute the initiation of criminal proceedings against him. *See Costello v. Milano*, 20 F. Supp. 3d 406, 419 (S.D.N.Y. 2014) (initiation requirement not satisfied where officer assisted in arresting plaintiff but had no involvement in decision to prosecute plaintiff "by, e.g., signing a charging instrument, discussing [p]laintiff's prosecution with the DA's Office or involving himself in [p]laintiff's prosecution in any other way"). Because Catanzarita signed the initial complaint on which the District Attorney brought charges and on which McKenzie was arraigned and held in custody, *see* JSF ¶¶ 13–15, however, a jury could find those actions sufficient to establish that

Catanzarita initiated criminal proceedings against McKenzie on the basis of the allegations in the March 19, 2015 criminal complaint, *see, e.g.*, *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006) ("In malicious prosecution cases brought against police officers, plaintiffs have demonstrated that officers initiated criminal proceedings by having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints."). The evidence, of course, would also permit the finding that Twum initiated criminal proceedings, and Twum does not argue otherwise.

In addition, contrary to defendants' argument, the evidence would also permit a finding that the criminal proceedings were terminated in McKenzie's favor. After pursuing the charges against McKenzie as brought in the March 19, 2015 complaint, the Bronx District Attorney's Office, before trial, dropped the resisting arrest charge, and, at trial, dropped the final charge, of reckless driving, on the ground that the evidence of McKenzie's guilt was insufficient. *See* Dkt. 69-6 ("May 5, 2016 Crim. Trial Tr.") at 53–54. It thereby represented, in so many words, that McKenzie was legally entitled, on the reckless driving charge, to a judgment of acquittal.

That circumstance would clearly support a finding of favorable termination with respect to McKenzie's malicious prosecution claim as brought under state law. Under New York law, favorable termination requires only that the criminal proceeding be terminated such that charges may not be brought again and that "the circumstances surrounding the termination are not inconsistent with the innocence of the accused." *Cantalino v. Danner*, 96 N.Y.2d 391, 395 (2001). A prosecutor's elective decision to drop or dismiss a charge may sometimes constitute a favorable termination in favor of the defendant. A "formal abandonment of the proceedings by the public prosecutor" can constitute favorable termination. *Lawson v. N.Y. Billiards Corp.*, 331 F. Supp. 2d 121, 131 (E.D.N.Y. 2004) (denying defense motion for summary judgment on

malicious prosecution claim where transcript of the proceedings reported that the Assistant District Attorney stated to the trial court, "[t]he People move to dismiss the case. We cannot prove it beyond a reasonable doubt").

To be sure, under § 1983, the bar to demonstrate favorable termination is higher. In the Second Circuit, "a plaintiff asserting a malicious prosecution claim under § 1983 must still show that the underlying criminal proceeding ended in a manner that affirmatively indicates his innocence." *Lanning*, 908 F.3d at 22. "When a person has been arrested and indicted, absent an affirmative indication that the person is innocent of the offense charged, the government's failure to proceed does not necessarily 'impl[y] a lack of reasonable grounds for the prosecution.'" *Id.* at 28 (quoting *Conway v. Vill. of Mount Kisco*, 750 F.2d 205, 215 (2d Cir. 1984)). Indeed, "where a dismissal in the interest of justice leaves the question of guilt or innocence unanswered . . . it cannot provide the favorable termination required" as the basis for a claim of malicious prosecution. *Id.* at 28–29 (quoting *Hygh v. Jacobs*, 961 F.2d 359, 368 (2d Cir. 1992) (internal quotations and alterations omitted)).

Here, however, at least as to the reckless driving charge, a jury could easily find that the explanation given by the Bronx District Attorney's Office for dropping that charge affirmatively admits McKenzie's entitlement to prevail. After all, a lack of sufficient evidence in a criminal case entitles a defendant, as a matter of law, to a judgment of acquittal. The same, however, cannot be said for the unexplained decision by the Bronx District Attorney's Office in moving, pre-trial, to dismiss McKenzie's resisting arrest charge. McKenzie has not adduced any basis on which to argue that that decision "ended in a manner that affirmatively indicated his innocence." *Lanning*, 908 F.3d at 28. Accordingly, should McKenzie's § 1983 claim sounding in malicious prosecution go to trial, it can proceed based only on the prosecution for reckless driving.

The Court therefore denies defendants' motion for summary judgment on McKenzie's state and federal malicious prosecution claims, while limiting the scope of the federal claim to the prosecution for reckless driving.

**F.      Federal Denial of Right to a Fair Trial Against Both Defendants**

**1.      Governing Law**

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). Because the right to be free from such misconduct is clearly established, and because "no reasonably competent police officer could believe otherwise," qualified immunity is unavailable on such a claim. *Id.*

To make out a § 1983 claim for deprivation of the right to a fair trial through fabrication of evidence, a plaintiff must show that an "(1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012). In contrast to claims of false arrest or malicious prosecution, the existence of "probable cause is not a defense to a claim for a denial of the right to a fair trial" based on fabrication of evidence. *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016) (internal alteration and citation omitted).

On a motion for summary judgment directed to a claim of fabricated evidence, "a § 1983 plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact." *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019); *see also Rentas v. Ruffin*, 816 F.3d 214, 221 (2d Cir. 2016). But where a plaintiff has failed to "present[] evidence

indicating that an officer falsified information or fabricated evidence," summary judgment is appropriate. *Bennet v. Vidal*, 267 F. Supp. 3d 487, 499 (S.D.N.Y. 2017). Section 1983 claims for fabrication of evidence cannot be brought "prior to favorable termination of [a plaintiff's] prosecution." *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (S. Ct. 2019).

### 2. Discussion

Defendants do not dispute that there is sufficient evidence to establish the first, fourth, and fifth prongs of the *Jovanovic* test. Twum and Catanzarita, the police officers who arrested McKenzie, were investigating officials; by signing sworn criminal complaints, each forwarded information to the Bronx District Attorney's Office; and McKenzie experienced a deprivation of liberty when, on the basis of that information, the Bronx District Attorney's Office brought charges, on which he was arraigned, against him. Defendants instead pursue summary judgment on McKenzie's fabrication of evidence claim based on the second and third prongs. They dispute that there is a factual basis on which a jury could find either that the officers fabricated evidence or that such evidence would be likely to influence a factfinder's decision. Def. Mem. at 22. For the following reasons, the Court denies the motion for summary judgment, finding sufficient evidence on which a jury could find for McKenzie on these claims.

McKenzie's theory is that defendants fabricated material evidence including false statements in (1) Twum's reckless driving and disorderly conduct summonses issued on December 7, 2014; (2) Catanzarita's December 8, 2014 sworn criminal complaint; (3) Twum's December 8, 2014 signed and sworn deposition substantiating the information in Catanzarita's complaint; (4) Twum's March 19, 2015, sworn superseding criminal complaint containing allegations of resisting arrest and reckless driving; and (5) Twum's testimony at trial. Pl. Mem. at 17–19. McKenzie disputes as untruthful the factual accusations made in these charging documents. That alone would permit his claim of fabrication to reach a jury. And the record

33

contains other evidence that a jury could find "tend[s] to support an inference" that defendants'
accounts of McKenzie's reckless driving, disorderly conduct, and resisting arrest were
fabricated. *Bellamy*, 914 F.3d at 746. The arrest report completed in connection with
McKenzie's December 7, 2014 arrest stated that McKenzie had a broken mirror and an
obstructed rear windshield, that he resisted arrest, and that he obstructed governmental
administration. JSF ¶ 10. But, as McKenzie notes, Twum admitted in his deposition that he was
uncertain whether the vehicle's mirror mount or the glass was in fact broken, and no photographs
of the allegedly broken mirror were ever taken, at the scene of the arrest or thereafter. Dkt. 69-2
(Twum Dep. II) at 123. In their depositions, Twum and Roman backed away from the earlier
claim that the laundry bags obstructed McKenzie's rear windshield, testifying that, in fact, they
were not certain that this was so. Pl. Counter 56.1 ¶ 3. McKenzie further notes arguable
inconsistencies in the manner in which the officers claimed McKenzie resisted arrest; these
variously described him as flailing his arms, twisting his body, stiffening his arms at his sides,
putting them in his pockets, and holding them in front of his body. *Id.* ¶ 33. And the deposition
testimony of Officer Roman arguably undercuts various factual representations made by the
defendant officers in support of charges against McKenzie, including that he could not recall
McKenzie shouting when he was handcuffed. Roman Dep. at 44, 106–107.

In addition, McKenzie notes, there are arguable inconsistencies among the defendants'
accounts of events. Neither the arrest report nor the summonses completed on the day of the
arrest contained any allegation that McKenzie's vehicle had nearly collided with Twum's.
Twum made this allegation for the first time in his March 19, 2015 sworn superseding criminal
complaint. Pl. Counter 56.1 ¶ 5. At trial, Twum testified that McKenzie had been speeding and
that he had crossed a double yellow line on Furman Avenue, nearly hitting Twum's vehicle. *Id.*

He was then presented with photographic evidence on cross-examination showing that Furman Avenue did not have double yellow lines and that the road in fact had large speed bumps. *Id.* Shortly thereafter, the Bronx District Attorney's Office moved to dismiss the reckless driving charge for lack of sufficient evidence.

Considering this evidence in totality, and in the light most favorable to the non-moving party, a finder of fact could conclude that Twum and/or Catanzarita fabricated material aspects of their claims of unlawful conduct on McKenzie's part. And because the two officers were central eyewitnesses to McKenzie's conduct, whether their alleged false claims were likely to influence a factfinder's decision is also a question of fact properly left to the jury.

The Court accordingly denies defendants' motion for summary judgment on McKenzie's fabrication of evidence claim.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment on McKenzie's false arrest claim against Catanzarita and his excessive force and First Amendment retaliation claims against both Catanzarita and Twum. The Court, however, otherwise denies defendants' motion for summary judgment.

This case is now ready to proceed to trial on the remaining claims,[6] unless discovery is now sought on the *Monell* claim as to which the Court stayed discovery.

The Court directs the parties to confer, and by July 29, 2019, to file a joint letter apprising the Court (1) as to their views whether to pursue *Monell* discovery, and, if so, as to a prompt schedule for completion of such discovery; and (2) of the anticipated length of the trial. Barring

---

[6] These are, under federal law, the false arrest claim against Twum; the unlawful search and seizure, deprivation of a right to a fair trial through fabrication of evidence, and malicious prosecution claims against both defendants; and the *Monell* claim against the City. The remaining state-law claims are the malicious prosecution claim against both defendants and the claim for *respondeat superior* liability against the City.

notice that the case is on track for a prompt settlement, the Court expects then to set a schedule requiring submissions, shortly, of a Joint Pretrial Order and the other required pretrial filings set forth in the Court's Individual Rules.

The Court respectfully directs the Clerk of Court to terminate the motions pending at Dkts. 55 and 64.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: July 22, 2019
        New York, New York